IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JEROLD S. RAWSON,** on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>v.<br><br>**SOURCE RECEIVABLES MANAGEMENT, LLC, RESURGENT CAPITAL SERVICES, L.P., ALEGIS GROUP LLC, and LVNV FUNDING, LLC,**<br><br>Defendants | Case No. 11 C 8972 |

**MEMORANDUM OPINION AND ORDER**

On December 19, 2011, plaintiff Rawson brought this putative class action against defendants Source Receivables Management, Inc. ("Source"), Resurgent Capital Services, LP ("Resurgent"), Alegis Group LLC ("Alegis"), and LVNV Funding ("LVNV"), asserting claims under the Fair Debt Collection Practices Act, 15 U.S. C. §§ 1692 et seq ("FDCPA"). Now before me is plaintiff's Second Amended Motion to Certify Class, which I grant for the following reasons.

I.

The third amended complaint alleges that on or around November 3, 2011, Source sent Rawson a form dunning letter naming Resurgent as its "Client" and stating that Rawson had a "Current Balance" of $11,426.29. The letter did not identify the original creditor, nor did it identify defendant LVNV as the current owner of the debt.

1

Plaintiff claims that the underlying debt is an expired credit card debt that can no longer be enforced under Illinois' five year statute of limitations.

The body of the letter plaintiff received reads, in its entirety:

> RESURGENT CAPITAL SERVICES LP has placed your account with Source Receivables Management to recover the above referenced Amount Due. To avoid further collection efforts, please contact us at the number listed below to make arrangements for payment or remit the balance of the Amount Due to the address provided on the remittance coupon below.
>
> Source Receivables Management
> 877-251-3771
>
> We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If your financial institution rejects or returns your payment for any reason, a service fee, the maximum permitted by applicable law, may be added to the Amount Due.

In Count I of the complaint, plaintiff asserts that defendants violated the FDCPA by sending a dunning letter that concealed the identity of LVNV as the current debt owner and misleadingly portrayed Resurgent as the current owner. In Count II, plaintiff asserts that defendants violated the FDCPA by (1) failing to disclose that the debt was time-barred, and that defendants could not sue on the time-barred debt, and (2) representing or implying that the debt was legally enforceable when it was not.

Plaintiff seeks to certify two classes, and their respective subclasses, defined as follows:

Class A consists of:

2

(a) all individuals in the United States (b) to whom defendant Source sent a letter in the form represented by <u>Exhibit A</u> (c) that refers to Resurgent as the "client" of Source and (d) does not otherwise identify the party claiming to be the current owner of the debt, (e) which letter was sent on or after December 19, 2010 and on or before January 8, 2012.

Class B consists of:

(a) all individuals in Illinois (b) to whom Source (c) sent a letter seeking to collect a debt (d) which debt was a credit card debt on which the last payment had been made more than five years prior to the letter (e) which letter was sent on or after December 19, 2010 and on or before January 8, 2012.

Each of Classes A and B has a subclass consisting of:

all class members with respect to whom LVNV was the alleged current owner. If the alleged current owner of each class member's debt is LVNV, as it is with Plaintiff, the subclass is coterminous with the class.

II.

A class may be certified if the proposed class both meets the prerequisites of Fed. R. Civ. P. 23(a) and complies with at least one subsection of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(a) establishes four threshold requirements: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Id.* at 613 (original alterations and ellipses). Rule 23(b)(3)-the subsection plaintiff invokes

here-requires that common questions of law or fact predominate over individual questions, and that the class action be superior to other available methods of resolving the controversy. *Id.* at 615. I have broad discretion to determine whether class certification is appropriate. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). It is plaintiff's burden to establish that all of the foregoing requirements are met. *Hernandez v. Midland Credit Management, Inc.*, 236 F.R.D. 406, 410 (N.D. Ill. 2006) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)).

There is no magic number required to satisfy the numerosity requirement, nor must the exact number of class members be known. *Keele v. Wexler*, No. 95 C 3483, 1996 WL 124452, at *3 (N.D. Ill. Mar. 19, 1996) (Gettleman, J.), *aff'd*, 149 F.3d 589 (7th Cir. 1998). I may make common sense assumptions in assessing whether this requirement is met. *Id.* Here, plaintiff asserts that numerosity can be inferred based on the fact that the dunning letter is, on its face, a form letter. I agree that this supports a finding of numerosity, and, indeed, defendants do not dispute that the proposed classes satisfy this element of Rule 23(a).

Nor do defendants dispute that the proposed classes satisfy the commonality requirement, which is usually met where "a common nucleus of operative facts" is alleged. *Keele*, 149 F.3d at 594. Where, as here, the defendants are alleged to have "engaged in standardized conduct towards members of the proposed class by mailing to them

allegedly illegal form letters," commonality is satisfied. *Id.*

The typicality analysis is closely related to the commonality inquiry. *Id.* at 595. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (citations and internal quotation omitted). That is plainly the case here. Defendants' argument that plaintiff's individual claim is subject to particular defenses–and is therefore "weakened"–on the basis of plaintiff's testimony that he understood the letter and was ultimately able to identify the debt as an expired credit card debt, has no merit under the weight of the law in this circuit.[1] Whether the dunning letter was deceptive or misleading in violation of § 1693e is an objective test, based on what an "unsophisticated consumer" would understand. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). Indeed, "it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Id.* Accordingly, the typicality of plaintiff's

---

[1]Defendants' sole support for their position is *Turner v. Diversified Adjustment Service, Inc.*, No. 00 C 463, 2000 WL 748124 (N.D. Ill. May 31, 2000) (Shadur, J.). While it is true that the *Turner* court noted the plaintiff's "disclaimer of any confusion on his own part" as among the factors weighing against the plaintiff's typicality and adequacy in a putative FDCPA class action suit, no other district court in this circuit has denied class certification on this basis, and certainly none since the Seventh Circuit's unambiguous statement in *Lox* (and, before that, in *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991, 995 (7th Cir. 2003)), that the unsophisticated consumer test is an objective one.

5

claim does not turn on whether he subjectively understood the letter in the same manner as the proposed class members. Nothing in defendants' opposition meaningfully disputes that plaintiff's claims "have the same essential characteristics as the claims of the class[es] at large," *De La Fuente*, 713 F.2d at 232, and are therefore typical.

Adequacy of representation requires an inquiry into two factors: first, whether plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation; and second, whether the named plaintiff and the proposed class have antagonistic or conflicting interests. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Defendants raise no objection with respect to the first prong, and, indeed, the firm representing plaintiff has a long history of litigating cases such as this one, including in many instances against defendants' counsel. Defendants insist, however, that Rawson is not an adequate class representative, raising two arguments. The first is largely indistinguishable from their typicality argument, and it fails for the same reason. The second argument is that plaintiff is inadequate "because he has radically changed his position regarding the basis for Count II of the complaint." It is not at all clear, and defendants do not explain, why an evolving theory of the case in itself is an obstacle to adequate representation. Nor am I persuaded by defendants' argument that plaintiff cannot adequately represent the class because he testified that he believed the dunning letter "implied or threatened

6

litigation." As noted above, plaintiff's subjective understanding of the letter is irrelevant to the class claims regardless of plaintiff's theory.

Satisfied that plaintiff has established the Rule 23(a) prerequisites, I now move on to the analysis under Rule 23(b)(3). The first question is whether common issues of law or fact predominate, to which I find that the answer is unquestionably yes. Plaintiff identifies three common issues: whether the dunning letter (1) discloses the current owner of the debts, (2) incorrectly implies that the owner is Resurgent when that is not true, and (3) discloses the time-barred nature of the debt. Defendants' insistence that resolution of plaintiff's claims on a class-wide basis would require "individual inquiries into context" is belied by their failure to identify a single individual issue relevant to plaintiff's claims. Instead, defendants emphasize the undisputed points that 1) only a statement that would mislead the unsophisticated consumer violates the FDCPA, citing *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643 (7th Cir. 2009) (reiterating that the test is objective); and 2) only "material" statements are actionable under the statute, citing *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009) (immaterial statement would not mislead the unsophisticated consumer). These arguments are red herrings that plainly do not refute plaintiff's assertion that common issues predominate over individual ones. Nor do defendants' speculations about putative class members who, for example, "may not have read the letter," or

7

whose subjective circumstances may have influenced how they understood it. Indeed, defendants cite no authority for their argument that "these individual examinations and determinations will be necessary" to the resolution of the class claims alleged.

Defendants' final argument is that a class action is not the superior method of adjudicating plaintiff's claims because Source lacks the financial wherewithal to pay more than a de minimis amount to compensate the proposed class. The parties go back and forth in their briefs about which of the defendants would be responsible for paying any judgment if plaintiff prevails; but that dispute can be left for another day because I conclude that a class action is the superior method for adjudicating these claims regardless of whose coffers are at stake. Even assuming that class members could expect no more than a de minimis recovery, other interests are at stake. As I have noted in the past, "if class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on." *Miller v. McCalla*, 198 F.R.D. 503, 506 (N.D. Ill. 2001). While it is true that the statute allows for individual recoveries of up to $1000, "this assumes that the plaintiff will be aware of her rights, willing to subject

herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-45 (7th Cir. 1997) ("we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action"). And of course, judicial efficiency is served by aggregating claims into one lawsuit, rather than resolving the same issue in multiple, individual suits.  In short, even if I assume that the putative class could expect, at best, a *de minimis* monetary recovery, I am nevertheless convinced that a class action is the superior method of adjudicating plaintiff's claims.

### III.

For the foregoing reasons, plaintiff's motion for class certification is granted.  Two classes, Class A and Class B, and their respective subclasses, as defined above, shall be certified.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated: February 13, 2013