```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

Jerold S. Rawson, *on behalf of*  )
*himself and a class*             )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   Case 11 C 8972
                                  )
                                  )
Source Receivables Management, LLC, )
Resurgent Capital Services, L.P.,   )
                                  )
        Defendants.               )

### MEMORANDUM OPINION AND ORDER

Plaintiff Jerold Rawson filed this class action under the Fair Debt Collection Practices Act ("FDCPA"), alleging that defendant Source sent him, and two classes of similarly situated individuals, a letter that violated the statute in two respects. In Count I of his class complaint,[1] plaintiff claims that the letter unlawfully failed to identify the current owner of the recipient's alleged debt. He seeks statutory damages on behalf of himself and a class for this violation. In Count II, plaintiff claims that the letter violated the statute by failing to disclose that the alleged debt was time barred. He seeks actual and statutory damages on behalf of himself and a class. Plaintiff moved successfully for certification of two classes,

---

[1] All references to the complaint refer to plaintiff's Corrected Third Amended Complaint, filed at DN 42.

each with a subclass, corresponding to the foregoing counts. The classes are defined as follows:

Class A consists of:

(a) all individuals in the United States (b) to whom defendant Source sent a letter in the form represented by <u>Exhibit A</u> (c) that refers to Resurgent as the "client" of Source and (d) does not otherwise identify the party claiming to be the current owner of the debt, (e) which letter was sent on or after December 19, 2010 and on or before January 8, 2012.

Class B consists of:

(a) all individuals in Illinois (b) to whom Source (c) sent a letter seeking to collect a debt (d) which debt was a credit card debt on which the last payment had been made more than five years prior to the letter (e) which letter was sent on or after December 19, 2010 and on or before January 8, 2012.

Each of Classes A and B has a subclass consisting of:

all class members with respect to whom LVNV was the alleged current owner. If the alleged current owner of each class member's debt is LVNV, as it is with Plaintiff, the subclass is coterminous with the class.

Mem. Op. and Order of 02/13/2013 at 2-3, DN 162.

The parties later cross-moved for summary judgment on liability, and I granted plaintiff's motion and denied defendants'. Order of 01/06/2016, DN 274. I concluded, with respect to Count I, that the letter plaintiff received violated the statute's explicit requirement that debt collectors disclose the identity of the creditor. *Id*. at 5. I further found, with respect to Count II, that the letter was facially deceptive for failing to disclose the time-barred nature of the debt, relying heavily on *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014), in which the Seventh Circuit "explained that '[w]hether a debt is legally enforceable is a central fact about the character and legal status of that debt,' and held that letters seeking to collect time-barred debts while giving no 'hint that the debts...were vulnerable to an ironclad limitations defense' 'misrepresented the legal status of the debt, in violation of the FDCPA.'" 01/06/2016 Order at 8 (*citing McMahon* 744 F3d at 1021).

Before me is the parties' joint motion for preliminary approval of a global class settlement involving three cases: the instant case; *McMahon* (the selfsame, now pending before Judge Alonso as Case No. 12-cv-1410 following remand by the Seventh Circuit); and a case captioned *Mitchell v. LVNV Funding et al.*, 2:12-cv-523, currently pending before Judge Springmann in the Northern District of Indiana. The defendants in the three cases

3

are overlapping but not co-extensive (Source Receivables Management is a party only in *Rawson*, and only *McMahon* names defendant Tate & Kirlin Associates), although the law firms involved in the proposed settlement are identical. Cross-motions for summary judgment that substantially echo the arguments the parties raised at summary judgment in this case were filed in *Mitchell*, though the motions were terminated based on the parties' notice of settlement. *See Mitchell*, DN 129. For the same reason, proceedings have been stayed in *McMahon*, and summary judgment motions, though scheduled, have not been filed.

For the reasons explained below, I decline to approve the proposed settlement.

I.

The global settlement identifies the four classes (and respective subclasses) certified in the three actions. The *Rawson* classes are those defined above. The *McMahon* class is defined as:

> (a) all individuals in Illinois (b) to whom LVNV, Resurgent, or any debt collector employed by LVNV or Resurgent (c) sent a letter seeking to collect a debt that referred to a "settlement" (d) which debt was (i) a credit card debt on which the last payment had been made more than five years prior to the letter or (ii) a debt arising out of the sale of goods (including gas) on which the last payment had been made more than four years prior to the letter (e) which letter was sent on or after February 28th

2011 and on or before March 19, 2012, (f) where the individual after receipt of the letter, (i) made a payment, (ii) filed suit, or (iii) responded by requesting verification or contesting the debt.[2]

The *Mitchell* class comprises:

> (a) all individuals with addresses in Indiana or Illinois (b) to whom LVNV, Resurgent, or any debt collector employed by LVNV or Resurgent (c) sent a letter seeking to collect (d) a credit card debt on which the last payment had been made more than five years (Illinois residents) or six years (Indiana residents) prior to the letter (e) which letter was sent on or after (i) December 17, 2012 in the case of Indiana residents or (ii) February 28, 2011 in the case of Illinois residents and (f) on or before January 7, 2013 (g) where the individual after receipt of the letter, (i) made a payment,(ii) filed suit, or (iii) responded by requesting verification or contesting the debt.
>
> Subclass: those class members who received a copy of the letter attached as Exhibit A to the Second Amended Complaint.

Case No. 2:12-cv-523-TLS (N.D. Ind.) DN 88 at 21.

The material terms of the proposed global settlement are as follows: Defendants agree to pay $7,000 to Rawson, and $4,500 to

---

[2] Although the parties represent that this class has been certified in *McMahon*, no class certification order has been entered in that case since the Seventh Circuit determined that class treatment of the named plaintiff's claim is appropriate. Nevertheless, I assume for purposes of this order that a class as defined above has been or will be certified in *McMahon*.

5

each of McMahon and Mitchell, as damages for their claims and as incentive awards for bringing their claims on behalf of the classes. Defendants further agree to create a class settlement fund of $175,092, to be distributed pro rata, by check, among class members who do not opt out of the settlement and who timely return claim forms. Defendants will bear all costs associated with class notice and claims administration. Class counsel will file a petition for attorneys' fees and costs, and defendants agree not to dispute any award up to $430,000.

The named plaintiffs agree to release all claims against the defendants that were or could have been brought in their respective actions. The class members in each case who do not opt out of the settlement likewise release all such claims, except they "do not release any claims for actual damages and do not release any claims or defenses concerning the underlying debt, specifically (1) whether any debt is in fact owed, (2) the proper crediting of payments, and (3) the accurate reporting of the alleged debt to the credit reporting bureaus." Agreement, at 7-9. DN 307-1.

The parties' joint motion for approval asserts that the above terms are fair and reasonable. Their largely boilerplate analysis notes that the proposed settlement was reached after arms-length discussion; that defendants deny all liability to plaintiffs and the class members and desire to settle solely to

avoid the "expense, burden, and future uncertainty" of further litigation; that class counsel "have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing" the actions, and "the likelihood of recovering damages in excess of those obtained through this settlement," among other factors.

Observing that the FDCPA "caps a class's recovery for statutory damages at the lesser of 1% of the debt collector's net worth or $500,000," and in consideration of "the financial information Defendants provided to Plaintiffs' counsel and the nature of the claims alleged," the parties assert that the settlement is fair, reasonable, and in the best interest of the classes. In this connection, the parties add that defendants LVNV and Alegis "deny that they are debt collectors and deny that their net worth is relevant to any damages calculation in this case," and assert that even if the three cases were to proceed to trial, the class members "would not receive more than 1% of the debt collectors' net worth." The motion does not identify the net worth of any of the defendants, however, nor does it state what percentage of their individual or collective net worth is represented by the $175,092 set aside for pro rata distribution to class members.[3]

---

[3] At the 12/05/2016 hearing on their motion, counsel provided partial information in this respect, representing that

7

The parties state that there are approximately 175,092 class members in the *Rawson*, *McMahon*, and *Mitchell* classes combined. Accordingly, if every class member returned a claim form, each would receive an award of $1.00. Based on their experience in similar cases, however (and indeed, all counsel involved have extensive experience in this area), counsel expect approximately 10% of class members to return claim forms, which means that each participating class member is likely to receive around $10.00.

II.

The FDCPA's civil liability provision, 15 U.S.C. § 1692k, provides that a debt collector found to have violated the statute is liable for: 1) actual damages; 2) "additional damages" the court may allow, up to a cap, in class actions, of "the lesser of $500,000 or 1 per centum of the net worth of the debt collector;" and 3) costs and reasonable attorneys' fees as determined by the court. § 1692k(a). Statutory damages do not require proof of actual damages. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). As noted above, plaintiff Rawson asserted

---

Resurgent's net worth is approximately $7.1 million; Source's net worth is $0; LVNV's net worth is approximately $10.6 million; and Tate and Kurlin's net worth is approximately $247,000, for a total net worth of approximately $17.9 million. But this total excludes defendant Alegis's net worth, which defendants have not disclosed. *See* Tr. of 12/05/2016 Hr'g. at 33-34. Additionally, class counsel acknowledged that he had not taken discovery to confirm the accuracy of defendants' representations. *Id*. at 47.

8

statutory damages on behalf of himself and a class in Count I of his complaint, and he asserted actual and statutory damages on behalf of himself and a class in Count II. The plaintiffs in *McMahon* and *Mitchell* likewise asserted actual and statutory damages in their respective single count complaints. All plaintiffs seek attorneys' fees and costs.

Before turning to the substantive fairness of the proposed settlement, I note as a preliminary matter that the parties articulate no explanation for how I may approve a settlement that purports to resolve three cases pending on separate dockets before three judges in two different federal jurisdictions. While it is indeed common in cases of this nature, i.e., "cases in which class counsel want to maximize the settlement and the defendants don't want to settle except for 'global peace,'" for "counsel to negotiate a single nationwide settlement and agree to submit it for approval to just one of the district courts in which the multiple actions had been filed," *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014), such cases are typically consolidated in some fashion before the judge charged with evaluating the settlement. *See, e.g., In re Amino Acid Lysine Antitrust Litigation*, MDL No. 1083, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) (Shadur, J.) (preliminary fairness review of cases consolidated in MDL); *Pearson* v. NBTY No. 11-cv-7972, 2014 WL 30676 (approving global settlement of cases consolidated in a

second amended complaint), *rev'd*, 772 F.3d 778 (2014). That has not happened here, despite the parties' suggestion before Judge Alonso that some "mechanism" for consolidating the cases was appropriate for the purpose of effectuating their proposed global settlement. *See McMahon*, Case No. 12-cv-1410, DN 208 at 2 (joint motion for extension of time, stating that parties were "still trying to ascertain the appropriate mechanism to have the *McMahon* case and the *Mitchell* cases administered by Judge Bucklo."). If there is precedent or reasoned analysis supporting my authority to approve the settlement of two class actions not before me, the parties have not identified or articulated it.

Nor is the question of my authority one I may take lightly. The Seventh Circuit has admonished district judges to "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions," and, indeed, has "gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002). My fiduciary duty requires me to "evaluate, among other things, the probability of plaintiff prevailing on its various claims, the expected costs of future litigation, and hints of collusion." *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006). In the present posture, my fiduciary duty is to

the *Rawson* classes only. This observation alone goes a long way toward explaining why I decline to approve the proposed global settlement.

First, by identifying only the total number of class members when the actions are combined, the parties' motion obscures the fact that the *Rawson* classes are several orders of magnitude smaller than the classes in the other cases. At a hearing on the parties' motion, plaintiff's counsel represented that the *Rawson* classes together comprise 698 class members, while the *Mitchell* class has 12,644 members and the *McMahon* class has 161,750 members. *See* Tr. of 12/05/2016 Hr'g, 36-37. This matters because in this circuit, the plaintiffs in *each* class action are entitled to seek statutory damages up to a maximum of 1% of defendants' total net assets. That is the logical extension of the Seventh Circuit's determination in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 347 (7th Cir. 1997), that "the FDCPA does not require a nation-wide class," and its holding in *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000), that "there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit." Indeed, district courts here and elsewhere have construed *Mace* and *Sanders* as expressly allowing "serial" FDCPA lawsuits that may increase the defendant's liability. *See Nichols v. Northland Groups, Inc.*, 2006 WL 897867 (N.D. Ill. Mar. 31, 2006)

(certifying classes that plaintiff's counsel—the same counsel who represents the classes here—acknowledged were "designed to increase Northland's liability"); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 483 (E.D.N.Y. 2016) (rejecting proposed class settlement on the ground that expansion of the class "diluted class settlement," and explaining that the "exponential increase in the size of the class without any measureable benefit to class members renders the settlement, as drafted, inadequate and unreasonable"); *Zimmerman v. Zwicker & Associates, P.C.*, Civ. No. 09-3905 (RMB/JS), 2011 WL 65912, at *5-*6 (D.N.J. Jan. 10, 2011) (same). Regardless of the total amount that may be appropriate as statutory class damages under § 1692k(2)(B), 1/698 of that amount is surely a better deal than 1/175,092 of it.[4]

To illustrate, suppose that instead of settling, *Rawson* proceeded to a damages trial, and that I ultimately determined that the maximum allowable statutory penalty were warranted.[5] Based on the parties' representation that 1% of defendants'

---

[4] This obvious advantage of a smaller class is not lost on plaintiff's counsel, who in the course of litigating *McMahon* defended the decision to narrow the class to "reduce the number of class members and thereby avoid the class receiving a de minimis recovery pursuant to § 1692k." 12-cv-1410 (N.D. Ill.) DN 132 at 10.
[5] Before the parties announced that they had reached a settlement, a bench trial on damages had been set for August 17, 2016.

12

total net worth is in the neighborhood of $179,000,[6] the pro rata share to each *Rawson* class member of statutory class damages would be approximately $256. Compare this with the settlement value of their statutory damages claim, which, as noted above, is expected to be between $1.00 and $10.00. Given that, in addition, the *Rawson* claims have already been established, while the *McMahon* and the *Mitchell* claims have not, it is exceedingly difficult to perceive any way in which the *Rawson* class members are well-served by having their claims combined with those of the class members in the other cases.

Moreover, I am perplexed by class counsel's disavowal, at the preliminary approval hearing, of the class members' ability to "get three bites at the apple" in separate class actions, each of which may seek statutory damages up to the 1% maximum for the certified classes. *See* Tr. of 12/05/2016 Hr'g. at 40. The parties cite no authority for requiring separately filed actions to consolidate for the purpose of narrowing their claims to a single "bite" at statutory damages. And while I am mindful that cases such as *Mace* and *Nichols* addressed the problem of continuing violations, while all agree that the violations alleged in these cases ceased around 2012, I note that the proposed settlement does not include any commitment on

---

[6] Although, as noted above, this total does not account for defendant Alegis's net worth. *See supra*, n. 3; Tr. of 12/05/2016 Hr'g. at 33-34.

defendants' part not to engage in the same or similar unlawful conduct in the future. This is especially troubling in view of Rawson's emphasis, at the class certification stage, on a "recurrent pattern" of unlawful conduct by Resurgent and LVNV, identifying no fewer than ten separate cases involving these defendants. DN 156 at 7–8.

Equally perplexing is the parties' assertion that if these cases went to trial, class members "would not receive more than the 1% of the debt collector's net worth (Alegis and LVNV deny that they are debt collectors)." Mot. at 7. First, as I explained at the hearing, the liability of all defendants has already been established in *Rawson*. If Alegis and LVNV wished to deny liability on the ground that they are not debt collectors, it was incumbent upon them to raise that argument in opposition to Rawson's summary judgment motion. Indeed, each of the substantive provisions on which Rawson's claims are based is explicitly directed to the conduct of "debt collectors," as that term is defined in the statute. While Source is the debt collector claimed to have sent Rawson and the *Rawson* classes the unlawful letters, Source allegedly acted at the direction of Resurgent, another debt collector that was itself attempting to collect debts on behalf of LVNV, also a debt collector and the debt owner. And while none of the complaints in these cases alleges that Alegis is a debt collector, each asserts that

14

Resurgent's acts are attributable to Alegis as Resurgent's general partner. Because none of the defendants argued, at the liability stage, that they are outside the statute's scope because they are not "debt collectors," they may not now, at least in *Rawson*, seek to avoid paying damages (or, more precisely, to avoid having their assets "count" for the purpose of determining defendants' collective liability cap under § 1692k) on that basis.[7] Nothing in the text of § 1692k supports that interpretation, nor have defendants cited any authority for it.

Second, what about actual damages under § 1692k(a)(1)? The parties' insistence that no class member would receive more than a pro rata share of 1% of the defendants' total net worth ignores that any claim member who actually made a payment after receiving a letter that violated the statute is entitled to prove actual damages and to recover that amount. Counsel is quick to point out that the proposed settlement preserves these claims for future litigation, but this reservation of rights is

---

[7] It seems to me that whether defendants may yet assert this defense in either *McMahon* or *Mitchell* is a question that must be decided by the judges before whom those cases are pending. I note, however, that defendants did not assert it in the summary judgment motion they filed in *Mitchell* before that case was stayed. At all events, if the defense potentially remains viable in those cases, that would only exacerbate the unfairness to the *Rawson* classes of having their claims consolidated for settlement, since the availability of a defense in *McMahon* and *Mitchell* that is no longer available in *Rawson* presumably heightens the comparative value of the *Rawson* claims.

evidently of little value. When I asked plaintiff's counsel what he intended to do about the people with actual damages claims, his response was: "I would be happy to represent them." Tr. of 12/05/2016 Hr'g at 55. That is what counsel is supposed to be doing *in these cases*. If class counsel is willing to relinquish pursuit of these claims at this juncture, after defendants' liability has been established in *Rawson* and the proceedings are at an advanced stage in all of the cases, how am I to credit his professed enthusiasm for bringing a *new* case on these claimants' behalf? True, the proposed settlement would be even worse for the class members if it released their claims for actual damages. But the fact that it preserves them is, from all that appears, a Pyrrhic victory. And while my primary concern, as a fiduciary, is that the settlement be fair to the *Rawson* classes, I note that class counsel's abandonment of the class members' actual damages claims is especially mystifying in *McMahon* and *Mitchell*, where, at plaintiff's insistence, the classes were limited, by definition, to individuals with colorable claims for actual damages.[8]

---

[8] I pause here to note that in *McMahon*, the Seventh Circuit stated that "the proposed class was estimated to have 3,000 members." *McMahon v. LNVN Funding, LLC*, 807 F.3d 872, 875 (7th Cir. 2015). At the approval hearing in this case, the parties represented that this number referred to *McMahon* class members with actual damages. *See* Tr. of 12/06/2016 Hr'g. at 36-37. Yet, the class to which the Seventh Circuit referred appears to be the very class that Judge Alonso has certified. Accordingly, the

Moreover, there is no question that taking actual damages out of the equation lets defendants off easy. Although class counsel stated at the hearing that they "don't know how much exactly [defendants] collected" on time barred debts, Tr. of 12/05/2016 Hr'g. at 56, they represented elsewhere that defendants admitted collecting over $6.7 million in payments from the class members in *McMahon*, and Judge Springmann found that defendants collected more than $11.4 million in payments from the two classes in *Mitchell*. *See* Pl.'s Class Cert. Mem. in *McMahon*, DN 132 at 10; Op. and Order of 11/10/2015 in *Mitchell*, DN 88 at 9.[9] Defendants' proposed payment of $175,092 in statutory penalties for engaging in unlawful conduct that netted them millions of dollars isn't a "penalty" at all; it's the cost of doing business, and a pretty low one at that.

---

basis for the parties' assertion that the *McMahon* class includes over 161,000 people is unclear. I need not solve this mystery, however, to deny their motion for settlement approval.

[9] In response to questions I raised at the hearing, defendants sent a letter stating that with respect to Count II in *Rawson*, "Source Receivable received payments from 6 individuals totaling $842.00" from members of Class B (asserting claims based on time-barred debts). In the same letter, defendants state that of the approximately 174,000 class members in *McMahon* and *Mitchell*, they "did not break out the number of persons who made payments," but that "LVNV collected approximately $3,062,435.74 from debt ownership acquisition through 7/31/2012." How these numbers may relate to the ones admitted or found elsewhere is unclear, but it is beyond dispute that defendants collected multiple millions of dollars from individuals who received collection letters on time-barred debts.

Nor am I persuaded that the expected cost of establishing the amount of defendants' liability for actual damages warrants class counsel's complete abandonment of these claims. It may be that "some testimony is probably required to establish actual damages." Tr. of 12/05/2016 Hr'g, 57. But if the percentage of class members who ultimately return claim forms is as low as the parties expect, then surely the burden of ascertaining from defendants' records which of those individuals made payments after receiving a deceptive letter (and thus narrowing the field of potentially viable actual damage claims) is not unreasonable.[10] Defendants insist that these individuals would still need to be cross-examined "to establish the reason they paid." Tr. of 12/05/2016 Hr'g, 57. Even assuming that is true, the information the parties have provided does not persuade me that the number of individuals who would require a hearing of some sort is so great as to be cost-prohibitive.

There are additional ways in which the *Rawson* class members seem to get the short end of the stick in this proposed settlement. The parties' boilerplate statement that the

---

[10] Indeed, as noted in footnote 9, above, defendants assert that Source received payments from six members of *Rawson*'s Class B (asserting time-barred debts), for a total of $842. Assuming for purposes of illustration that these payments were evenly distributed among the class members, each would be entitled to $140 in actual damages, while the marginal cost of establishing these damages, in the context of this litigation as a whole, is unlikely to be significant.

18

settlement is fair based upon "the nature of the claims alleged" fails to account for the fact that at least some *Rawson* class members have two substantively distinct claims. While it is true that *Rawson* seeks only statutory damages for Count I (based on defendants' failure to identify the current owner of the alleged debt), it stands to reason that the settlement value of two already-proven claims exceeds the settlement value of a single, as-yet-unproven claim. Yet the parties' proposed settlement treats all of the class members the same, without any reasoned explanation. When I asked counsel in court, "[w]hy shouldn't the *Rawson* people get more?" plaintiff's counsel admitted, "[i]t is difficult to articulate a reason why because the class happened to be defined in such a manner as to produce disparate number of plaintiffs in the three cases. But the violation is the same thing. That's why we thought it was fairer to put them together." Tr. of 12/05/2016. As I have just observed, however, at least some *Rawson* class members assert a different violation from the ones alleged in *McMahon* and *Mitchell*. More importantly, while it may be fortuitous that the *Rawson* classes are significantly smaller than the other two, Rawson's counsel has a duty to advocate zealously for the *Rawson* classes, regardless of whether other classes certified in other cases can expect to receive smaller statutory damages awards for prevailing on similar claims. Class counsel's willingness to

19

treat the members of all classes equally in the proposed global settlement raises serious conflict of interest concerns.

III.

For the reasons explained above, I decline to approve the proposed settlement.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 23, 2016